**EXHIBIT 10**



# BELL BOYD
### BELL, BOYD & LLOYD LLP

70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
312.372.1121 • Fax 312.827.8000

PETER G. RUSH
312.807.4352
prush@bellboyd.com
Direct Fax: 312.827.8005

March 27, 2007

**BY EMAIL AND FIRST CLASS MAIL**

Wilber H. Boies, Esq.
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606

### Re: Hewitt Calculations for Tittle/Newby Distributions

Dear Bill:

In response to your letter of March 21, 2007.

First, as subsequent events have unfortunately borne out, Hewitt has still not provided FTI with all the requested, necessary information. (*See* email correspondence of today attached hereto.) In that vein, we have been informed that the production of crucial information to FTI has been delayed for reviews by the Hewitt "legal team." That fact is inconsistent with your expressions of Hewitt's desire to work together to find a prompt solution. On a related topic, we understand that Hewitt has for some time been conducting an internal review of its work on this account. Has the review been completed? If so, when does Hewitt expect to share the results of that review with the client?

Second, given Hewitt's delay in the production of information the recovery letter simply has to be sent out now to mitigate further damages caused by Hewitt's miscalculation. Assuming Hewitt has confidence in its new calculations, please send out the recovery letter post-haste. We have attached our redline version of the recovery letter making a few simple comments to your draft. As to the handling of the call center, we control neither the data nor the databases to field questions from the Plan participants who will receive the letter from Hewitt. Needless to say, there is no realistic alternative to Hewitt in this respect.

Third, last Monday during our telephone call, you indicated your understanding that upon receiving the written go ahead, Hewitt was ready, willing and able to complete the calculations for the next distribution which has for months been slated for April 30, 2007. In your letter two days later, you stated Hewitt will need "several months" to perform the allocation for the next distribution. Hewitt has supplied no explanation for such a delay much less why it neglected to advise the client of that delay until your March 21st letter.

chicago • washington

434158/E/4

Wilber H. Boies, Esq.
March 27, 2007
Page 2

    Fourth, I have advised you that the Department of Labor is interested in understanding the amount of the shortfall currently affecting the Plan participants because of the Hewitt miscalculation, and the manner in which that miscalculation will be rectified. Your letter expresses a desire "to explore the facts and shrink the shortfall," but you have made it clear Hewitt will fund no part of that shortfall. Based on your letter, is it the position of Hewitt that the Department of Labor should be advised that the total amount of the shortfall in the Plan is only the "'cash' overpayment" calculated by Hewitt at $4,453,463.79? If not, what is the actual shortfall that should be communicated to the Department? As to your above-quoted suggestion, how can we shrink the shortfall other than through Hewitt's implementation of corrective action? Also, please explain what facts we need to explore.

    Fifth, with respect to your request to restrict communications to you, John Neslage and me, I point out that the three of us have had considerable difficulty executing even a simple conference call. Moreover, it is my experience here that the information coming to the Plan and Enron has been anything but prompt and free-flowing. As a consequence, we cannot condone any more informational bottlenecks than already seem to exist.

    Finally, on February 28, 2007 and on March 6, 2007, Hewitt was provided with notice of a dispute under the Amendment to Administrative Service Agreement ("ASA"). Hewitt has submitted its written responses to those notices of disputes. Pursuant to the terms of the ASA, the parties are obliged to meet "[w]ithin thirty (30) days of the delivery" of the initial notice "to attempt to resolve the dispute." Please provide some times next week (I am available this week, but I understand you are out of town all week) that you are available to meet to attempt to resolve this dispute.

                               Very truly yours,

                               Peter G. Rush

PGR:mqn
cc: John E. Neslage, Esq.

434158/E/4

| | |
|---|---|
| From: | Jones, Robert W. [Robert.Jones@ENRON.com] |
| Sent: | Tuesday, March 27, 2007 10:53 AM |
| To: | Bob Dunlap (E-mail) |
| Cc: | Butler, Pam; Brad Ross (E-mail); Jodi Ehrenhofer (E-mail) |
| Subject: | Hewitt Data Request Follow up |

Bob,

Per our conversation yesterday, the Administrative Committee requests the following:

1) A meeting between FTI representatives and Darrel Folkert to answer questions related to Hewitt's response to the FTI data request. We would like to meet at Hewitt's office in the Woodlands on either Wednesday, Thursday or Friday of this week.

2) We request that Hewitt provide directly to FTI a copy of the PGE DVD of microfiche used in the first allocation (1/1/98 to 6/30/99) along with the microfiche hardcopy print outs of the 7/1/97 to 12/31/97 participant data.

3) We request that Hewitt provide directly to FTI the hard copies of the EOG quarterly statements. We understand that these statements are in four boxes held at the Lincolnshire office.

4) Hewitt has told FTI that they have found certain audit papers pertaining to the ESOP and Savings Plan that may be helpful in the review of the allocation model and underlining participant data. In this regard, we request that Hewitt provide FTI with such data as soon as possible.

Please note, items 2 through 4 were requested in the original FTI data request and have not been received to date.

Please let me know if you have any question regarding this request.


**Robert W. Jones**
Administrative Committee of Enron Corp. Savings Plan

713-853-5810 *Office*
713-646-2110 *Fax*
robert.w.jones@enron.com

This e-mail is the property of Enron Corp. and/or its relevant affiliate and may contain confidential and privileged material for the sole use of the intended recipient (s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender or reply to Enron Corp. at enron.messaging.administration@enron.com and delete all copies of the message. This e-mail (and any attachments hereto) are not intended to be an offer (or an acceptance) and do not create or evidence a binding and enforceable contract between Enron Corp. (or any of its affiliates) and the intended recipient or any other party, and may not be relied on by anyone as the basis of a contract by estoppel or otherwise. Thank you.

3/27/2007

**Statement Date**

999999 999

Jane M. Sample
123 Main Street
City, State ZIP

Dear <Participant>:

You recently received a distribution from the Enron Corp. ~~Employee Stock Ownership~~Savings Plan ("~~ESOP~~Plan"). The distribution represented your share of the ~~ESOP~~ settlement funds resulting from the case of *Pamela A. Tittle, et al. v. Enron Corp., et al.* (the "Tittle Action"). A review of the calculation of your distribution has revealed an error. Because of this error, your share of the ~~ESOP~~ settlement funds was too high and you were overpaid.

**Overpayment Explanation**
Specifically, an incorrect opening ENRON stock value for the ~~ESOP~~portion of the calculation attributable to the opening balance in your Enron Corp. Employee Stock Ownership Plan ("ESOP") resulted in the overstatement of the amount of your losses. The opening stock price for January 1, 1998 (the first day of the ~~Settlement Period~~settlement period) was $41.56 per share. However, a value of $100 per share was incorrectly used to determine the value of your opening balance. For your reference, we are enclosing a copy of the explanation of how settlement payments were calculated. [Could you please provide us in advance with a copy of this explanation in order that we may comment on it?] You also received this explanation at the time of your distribution. It should help you understand how the use of an incorrect share value resulted in your overpayment.

The error also resulted in smaller payments to other members of the settlement class. Therefore, to ensure that all participants receive their agreed-upon share of the settlement funds, it will be necessary for you to immediately repay the amount of your overpayment ~~amount~~.

You were overpaid in the amount of $XXX.XX. With interest at a rate of % from the date of payment, your total amount due is $XXXX.XX (the Overpayment Amount). You will need to return the Overpayment Amount to the ~~ESOP~~Plan no later than **[3 weeks from mailing date]**.

**Payment Instructions**
Please send your check, made payable to _____ ~~to the following address:~~
_____ in the enclosed self-addressed stamped envelope.
[Repayment Address]

434053/E/3

**Ineligible Rollover Distribution**
Please be aware that ~~your Overpayment Amount~~the amount you were overpaid is not eligible for rollover to an individual retirement account (IRA) or other qualified retirement plan. If you transferred the ~~Overpayment Amount~~amount you were overpaid to an IRA or ~~other~~to another qualified retirement plan, you should contact the trustee or administrator of the IRA or qualified plan to resolve this matter and avoid additional taxes and penalties. You also will need to consult with your IRA provider or qualified plan administrator regarding the removal of any earnings associated with the ~~Overpayment Amount~~amount you were overpaid. The IRA provider or qualified plan administrator may require you to provide documentation regarding the ~~Overpayment Amount~~amount you were overpaid. If this letter is not sufficient for that purpose, please contact XXX at <Phone Number>.

**Tax Implications**
You should consult with your personal tax advisor about the tax effects of the overpayment and your repayment to the ~~ESOP~~Plan. You should determine whether you are obligated to file an amended tax return for the year that the ~~Overpayment Amount~~overpayment was distributed. Or, it is possible that you will be entitled to a deduction on you 2007 federal income tax return for the repayment to the ~~ESOP~~Plan of your Overpayment Amount.

**Legal Requirements**
Please understand that the ~~plan~~Plan sponsor ~~of the ESOP~~ is required by law to ensure the ~~ESOP~~Plan's compliance with the qualification requirements imposed by the Internal Revenue Code of 1986 and the Employee Retirement Income Security Act of 1974. Federal law requires that the ~~ESOP~~Plan be operated in accordance with its terms and requires that the ~~Company~~Plan sponsor immediately correct any errors it discovers, including the recovery of any overpayments.

We understand that issues associated with this settlement may be sensitive and want to apologize for any increased inconvenience that this error may have caused.

**Fore More Information [Contact persons to be designated]**
<Pending>

Document comparison done by DeltaView on Tuesday, March 27, 2007 10:54:52 AM

| Input: | |
|---|---|
| Document 1 | pcdocs://bblch_e/434053/1 |
| Document 2 | pcdocs://bblch_e/434053/3 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 25 |
| Deletions | 21 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 46 |