**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEWITT ASSOCIATES, L.L.C.,　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　Plaintiff,　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　　　) | No. 08 cv 3634 |
| v.　　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　　　) | Judge Der-Yeghiayan |
| ENRON CREDITORS RECOVERY CORP., f/k/a　　　) | |
| ENRON CORP., an Oregon Corporation,　　　　) | Magistrate Judge Cole |
| 　　　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　Defendant.　　　　　　　　　　　　　) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ENRON CREDITORS RECOVERY CORP.'S  MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant, Enron Creditors Recovery Corp., formerly known as Enron Corp. ("Enron"), by its attorneys, respectfully submits this reply memorandum in support of its motion pursuant to Title 28 of the United States Code, Section 1404, to transfer the above-captioned proceeding to the United States District Court for the Southern District of Texas, Houston Division.

**Preliminary Statement**

Conspicuously absent from Hewitt's Response is any suggestion, much less proof, that this litigation has any connection to the Northern District of Illinois.  Perhaps worse, the Response does virtually nothing to counter the overwhelming showing by Enron that almost everything of relevance to this action occurred and/or resides in the Southern District of Texas. These glaring deficiencies are only compounded by Hewitt's steadfast refusal to address the legal and factual overlap between this case and the Administrative Committee Action—although, tellingly, Hewitt does not dispute the reality that if this case proceeds here, it is virtually certain to pose a risk of inconsistent rulings to those in the Administrative Committee Action.  Hewitt also never comes to grips with the close connection between this action and the *Tittle* Litigation in view of the fact that Hewitt's services now at issue were as the Fund Administrator of the

*Tittle* Litigation settlement fund over which Judge Harmon, in the Southern District of Texas, has already obtained exclusive and continuing jurisdiction.

Instead, Hewitt attempts to stave off transfer of this cause by arguing that this Court should afford "substantial" deference to Hewitt's supposed choice of forum to the exclusion of any other pertinent—and in this case, predominant—considerations. But, to begin with, Hewitt never chose this forum. In fact, Hewitt has done everything possible to avoid having its gross negligence in allocating settlement funds that remain subject to Judge Harmon's jurisdiction decided in *any* federal forum, especially that of Judge Harmon. This case is before this Court only because *Enron* removed it from the forum that Hewitt *did* choose – the state court in Lake County, Illinois. Hewitt's choice of a state court forum has no bearing on whether this case should be transferred from this federal court to another located in a district in which virtually all of the relevant events took place. The Court should transfer this action to the Southern District of Texas where it belongs.

**Argument**

In its response, Hewitt asserts that Enron has failed to demonstrate that the private interests of the parties and the interest of justice in this case favor transfer. Hewitt's argument rings hollow, however, in that Hewitt simply *ignores* the overwhelming number of connections this case has to the Southern District of Texas. Instead, Hewitt's Response is chalked with vague claims that Enron "has not met its burden" and meandering discussions of matters that have no bearing on the propriety of transferring this case.[1] To the contrary, Enron has amply demonstrated that transfer will serve the private interests of the parties as well as the interest of

---

[1] Specifically, Hewitt devotes a significant portion of its argument to disputing the factual bases for the Enron Action, none of which will be resolved in *either* this case or the Enron Action at this time and all of which are extraneous to the transfer issue.

2

justice and that the Southern District of Texas is substantially more convenient than the Northern District of Illinois. *See Gen. Accident Ins. Co. v. Travelers Corp.*, 666 F. Supp. 1203, 1206 (N.D. Ill. 1987).

I.   **Transfer Will Serve the Interest of Justice**

The interest of justice in this case overwhelmingly counsels in favor of transfer. This factor, which focuses on efficient administration in the court system, "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Conseco Life Ins. Co.*, 2001 U.S. Dist. LEXIS 21475, at *8. *FUL Inc.*, 839 F. Supp. at 1311. Hewitt's declaratory judgment action in this Court is but one vein of much more comprehensive proceedings pending in the Southern District of Texas. Those comprehensive Texas proceedings entail a mirror action to this one filed by Enron, the underlying litigation for which Hewitt seeks defense and indemnification in this case, and the initial litigation in which Hewitt served, or, more aptly, disserved, as Fund Administrator of a settlement fund over which the Court maintains continuing jurisdiction. Hewitt began acting as Fund Administrator in that action still pending before Judge Harmon more than two years ago. Efficiency and judicious use of the Court's limited resources mandate that this action be transferred to allow for it to be consolidated with those three related proceedings.

Hewitt, without support, contends that this case is unrelated to the litigation pending in the Southern District of Texas. That contention cannot be reconciled with the *sua sponte* order of Judge Harmon which "CONSOLIDATED" Enron's mirror declaratory judgment action into the *Tittle* Litigation and the Administrative Committee Action. This consolidation is indicative of the Court's conclusion that those proceedings involve a common question of fact or law. *See* Fed. R. Civ. P. 42(a). The mirror Enron Action raises the very same factual and legal issues raised by Hewitt in this case. It bears noting that Hewitt has not challenged consolidation of the

3

Enron Action on the basis that the Enron Action is unrelated to the *Tittle* Litigation.

Furthermore, legal and factual questions which will be resolved in the Administrative Committee Action are central to, if not dispositive of, the issues raised in this case, including, among other things, whether the Letter Agreement (and not the ASA) governed the allocation work, and whether Hewitt was grossly negligent in carrying out that work. If the answer to either question is in the affirmative, then as a matter of law Enron will not be entitled to the indemnification it seeks in this case. It would be a misuse of judicial resources for this case to proceed before this Court when issues central to the case will by necessity be resolved in the Southern District of Texas—a concern which Hewitt does not dispute in its Response. Indeed, the possibility of inconsistent results and inconsistent decrees resulting from the same issues being litigated in two fora argues strongly for transfer and consolidation. *Solaia Tech., Inc. v. Rockwell Automation, Inc.*, No. 03 C 566, 2003 U.S. Dist. LEXIS 15285, *9 (N.D. Ill. Sept. 2, 2003); *Conseco Life Ins.*, U.S. Dist. LEXIS 21475, at *12; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.7 (1981).

Judge Harmon has been presiding over the *Tittle* Litigation and concomitant settlement fund allocation process for more than six and one-half years. Hewitt began acting as Fund Administrator in that action over two years ago, and has made multiple filings with, and appeared before, Judge Harmon in an effort to try to explain its "mistakes" in allocating settlement funds over which she maintains exclusive and continuing jurisdiction. Indeed, after submission of sworn evidence by Hewitt and argument from its "national counsel," Judge Harmon found that Hewitt "acted as Fund Administrator pursuant to, and as defined in, the Allocation Plan." (Enron Rev. Mem. Ex 6 ¶ 5; Enron Rev. Mem. Ex. 2 at 22-25.) Clearly, Judge Harmon has extensive experience both with the parties and the settlement fund impacted by

4

Hewitt's incompetence. With all this history before the Southern District of Texas, transfer of this case would promote judicial economy and thus serve the interest of justice. *See Zurich Ins. Co. v. Raymark Indus.*, 672 F. Supp. 1102, 1104 (N.D. Ill. 1987). Furthermore, federal judges in the Southern District of Texas are more familiar with Texas law, which governs the ASA upon which Hewitt's claim is based (Compl. Ex. A § 17.5). *See Gen. Accident Ins. Co.*, 666 F. Supp. at 1207 (interest of justice best served by transfer to Texas where judges were more familiar with law to be applied).

Notably, Hewitt failed to respond to Enron's argument that transfer of this case serves the interest of justice by preventing forum shopping by Hewitt. (*See* Enron Rev. Mem. at 14-15.) Hewitt's service as the very handsomely paid "Fund Administrator" bears directly on one of the key issues in this case – whether Hewitt's allocation work was performed on behalf of Enron pursuant to the ASA or on behalf of the Plans pursuant to the Letter Agreement. The Allocation Plan defines "Fund Administrator" as the "person or entity appointed or retained by the Enron Plans who shall administer the [Allocation Plan] and the distribution of the funds within the Plans set forth herein." (Enron Rev. Mem. Ex. 9 § I ¶ 19.) Perhaps Judge Harmon's knowledge and experience concerning the incompetence of Hewitt, and her finding that Hewitt acted as Fund Administrator, prompted this effort by Hewitt to seek greener pastures. Transfer is the appropriate response to such tactics. *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003); *O'Hopp v. Contifinancial Corp.*, 88 F. Supp. 2d 31, 35 (E.D.N.Y. 2000).

## II.     Transfer Will Serve The Private Interests of the Parties

While the compelling interest of justice alone warrants transfer of this case, the private interests of the parties, traditionally encompassing plaintiff's choice of forum, the situs of material events, the relative ease of access to sources of proof in each forum, and the

5

convenience of the parties, also weigh substantially in favor of transfer. *See*, *e.g.*, *Conseco Life Ins. Co. v. Reliance Ins. Co.*, No. 99 C 5020, 2001 U.S. Dist. LEXIS 21475, at *13-14 (N.D. Ill. Dec. 14, 2001).

A.    **Hewitt's Supposed Choice of Forum**

As a general matter, "[t]he plaintiff's choice of forum factor has diminished in significance since the enactment of § 1404(a)." *Id.* at *14. Nevertheless, Hewitt argues that its choice of forum is entitled to "paramount" consideration and "substantial weight." (Hewitt Resp. at 6.) This argument fails because (1) Hewitt did not choose this forum; and (2) an identical action is currently pending in the Southern District of Texas.

In short, Hewitt has not chosen this forum. Hewitt chose state court, specifically the county courts of Illinois, by filing this action in Lake County, Illinois on June 6, 2008. It was Enron that chose this forum, by properly removing the case to this Court on June 25, 2008. "Removal jurisdiction was designed to give parties a sequential choice of forum. Plaintiffs are given the first choice – they decide whether to sue in state or federal court – but then the choice is left to defendant." *Ford Motor Credit Co., Inc. v. Aaron-Lincoln Mercury, Inc.*, 563 F. Supp. 1108, 1113 (N.D. Ill. 1983); *see also Runge v. Maffei*, No. 96 C 1666, 1996 U.S. Dist. LEXIS 4038, at * 5 (N.D. Ill. Apr. 2, 1996) (on removal, federal forum is "defendant's choice"); *Scruggs v. Buss*, 138 Fed. Appx. 823, 825 (7th Cir. 2005) (defendants have an "independent entitlement to choose a federal forum"). A defendant can "defeat a plaintiff's choice of forum by removing to federal court a case the plaintiff filed in state court." *Agrella v. Great Am. Ins. Cos.*, No. 99 C 5309, 1999 U.S. Dist. LEXIS 18833, at *2 (N.D. Ill. Nov. 29, 1999).

Enron trumped Hewitt's choice of a state court forum when it removed the action to this Court. Thus, Hewitt's supposed choice of forum is entitled to little, if any, deference with

6

respect to this federal forum. *See*, *e.g.*, *Improvita Health Prods., Inc. v. F & F Foods, Inc.*, No. 1:07CV1097, 2007 U.S. Dist. LEXIS 39531, at *8 (N.D. Ohio May 31, 2007) ("Where as here, a case has been removed to federal court from state court, moreover, the plaintiff's choice of forum loses its presumptive effect. [The plaintiff] is no longer in its chosen forum- state court."); *Zaitsev v. State Farm Fire & Cas. Co.*, No. 05-CV-2098 (ILG), 2005 U.S. Dist. LEXIS 30325, at *9 (E.D.N.Y. Nov. 17, 2005) (noting plaintiffs' original choice of forum to have been state court and concluding that although plaintiff did not oppose defendant's removal to federal court, "this position belies any sustained commitment to plaintiffs' original choice of forum"); *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002) (plaintiff's choice of forum is not entitled to the substantial weight it might otherwise receive when the case has been removed to federal court "because the plaintiff is no longer in his or her chosen forum, which was state court").

The cases cited by Hewitt are inapposite. In *In re National Presto Industries*, 347 F.3d 662 (7th Cir. 2003), *Argos v. Orthotec*, 304 F. Supp. 2d 591 (D. Del. 2004) and *Gallery House, Inc. v. Yi*, 587 F. Supp. 1036 (N.D. Ill. 1984), defendants moved to transfer the action from plaintiff's *original* choice of forum, which was a federal forum. These cases are easily distinguished from the present action where Hewitt's original choice of forum – state court – was abandoned upon removal of the action to federal court. In *Pava v. Drom International Inc.*, 8 F. Supp. 2d 1062 (N.D. Ill. 1998) and *Vandeveld v. Christoph*, 877 F. Supp. 1160 (N.D. Ill. 1995), the court denied motions to transfer without any discussion whatsoever of the effect of removal on a plaintiff's choice of forum.

Hewitt also cites *Howell v. Joffe*, 478 F. Supp. 2d 1014 (N.D. Ill. 2006) in support of the argument that "[p]ost-removal, Hewitt's choice of forum is considered the Northern District of

Illinois." (Hewitt Resp. at 6.)  Hewitt misconstrues *Howell*.  In that case, plaintiff filed an action in state court located in the Eastern Division, and defendants then removed the case to federal court and moved to transfer the action to the Western Division.  *Howell*, 478 F. Supp. 2d at 1020.  Defendants *conceded* that the Eastern Division was plaintiff's choice of forum.  *Id.*  Thus, the court did not even have occasion to address whether, on removal, the federal forum is considered plaintiff's choice of forum.

Further, even under Hewitt's reading of *Howell*, transfer is proper in this case.  In *Howell*, the court held that plaintiff's choice of forum is "merely one factor to consider," and that choice "is afforded less deference when another forum has a stronger relationship to the dispute or when plaintiff's choice of forum has no connection to the material events."  *Id.* at 1022 n.6; *see also Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995) (granting transfer and holding "the weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim"); *Papapetrou v. Boeing Co.*, No. 07 C 5892, 2008 U.S. Dist. LEXIS 14146, at *13-14 (N.D. Ill. Feb. 25, 2008) (motion to transfer granted where a "nearly identical suit" was pending "in the very court to which defendants seek to transfer" and "Illinois [had] little connection to [the] case beyond being the location of Boeing's headquarters").  Even assuming, *arguendo*, that the present federal forum is regarded as Hewitt's choice of forum (it is not), the Southern District of Texas nevertheless has a vastly stronger relationship to the present dispute.

In addition, the Seventh Circuit has long recognized the impropriety of permitting identical actions to proceed in separate courts.  *See*, *e.g.*, *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959) ("Two simultaneously pending lawsuits involving identical issues and between the same parties, the parties being transposed and each prosecuting the other

8

independently, is certainly anything but conducive to the orderly administration of justice.").[2] Indeed, where, as here, a declaratory judgment action is filed first solely to "[wrest] the choice of forum from the natural plaintiff," convenience and the interests of justice dictate a transfer. *See, e.g., Newell Operating Co. v. Int'l Union of United Auto.*, No. 07-1931, 2008 U.S. Dist. Lexis 13996, at *19-20 (7th Cir. July 2, 2008).

In *Newell Operating Co.*, the Seventh Circuit affirmed the dismissal of a declaratory judgment action filed in the Northern District of Illinois in favor of a *later-filed* action pending in the Western District of Michigan. *Id.* at *22. The plaintiff-employer in that case amended its employee welfare benefits plan to allow administrators to charge retirees a uniform monthly premium. *Id.* at *1. "Anticipating backlash for the new charges," the plaintiff employer filed suit in the Northern District of Illinois requesting a declaratory judgment that the amendment to the plan did not violate the Employee Retirement Income Security Act ("ERISA") or the Labor Management Relations Act ("LMRA"). *Id.* at *3-4. Approximately one month later, four retirees filed suit in the Western District of Michigan claiming breach of their collective-bargaining agreements and violations of ERISA and LMRA.

In affirming dismissal of the Illinois action in favor of the later filed Michigan action, the Seventh Circuit reasoned that it was "far more sensible . . . that the retirees adjudicate their claims in Michigan, where the plant was located, where the ERISA and LMRA claims may go

---

[2]   Hewitt's Response focuses largely on the timing of the filing of its complaint in Lake County and the timing of the filing of Enron's complaint for declaratory relief in the Enron Action while largely assuming that the Administrative Committee Action and the *Tittle* Action have little or no legal or factual overlap with this case. (*See*, *e.g.*, Hewitt Opp'n at 2.) Even under Hewitt's narrow (and wholly unfounded) view of the overlap between these cases, the mere fact that Enron, as the movant seeking transfer in this case, filed its Texas lawsuit after Hewitt filed its Illinois lawsuit does not warrant continuing the proceedings in this forum. *See Conseco Life Ins. Co.*, 2001 U.S. Dist. LEXIS 21475, at *14 ("the fact that the movant filed its suit after the non-movant is not a dispositive factor in this District") (quoting *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 484 (N.D. Ill. 1987)).

forward in the same litigation, and where the retirees may avail themselves of the benefits of a class-action lawsuit." *Id.* at *20.  The court found that, despite the earlier filed Illinois case, the retirees were in fact the "natural plaintiffs" in the action and concluded that "both convenience and the interest of justice practically [dictated] a transfer to Michigan, where the mirror image of [the] suit [had] been filed." *Id.* at *19, *21 (citations omitted).

On June 18, 2008, the mirror of this action pending in the Southern District of Texas was consolidated into the *Tittle* Litigation before Judge Harmon.  Thus, the precise issues raised in this action are already being litigated as part of a substantial prior pending action in Texas.  As in *Newell*, virtually every aspect of the present action is centered in Texas.  Enron is also the natural plaintiff in this action as the dispute centers around Hewitt's gross incompetence in administering settlement proceeds payable to current and former Enron employees.  Hewitt's declaratory judgment action is merely an attempt to wrest Enron's choice of forum from it and circumvent rulings in the existing litigation.  This is insufficient grounds to afford deference to Hewitt's "choice of forum."

### B. The Situs of Material Events

Virtually every event material to this litigation occurred in Texas.  The issues which will be litigated in this case include:  whether the allocation work Hewitt botched was governed by the Administrative Services Agreement ("ASA") or the separate Letter Agreement; the proper interpretation of the governing agreement; and whether Hewitt's conduct in performing the allocation amounts to gross negligence, which, as Hewitt concedes, bars any indemnification even under the ASA.  Houston is the situs of the negotiation and execution of the ASA and the Amendments thereto. (Enron Rev. Mem. Ex. 3 ¶¶ 7, 14, 18, 19.)  Houston and The Woodlands are the situs of the vast majority of the work performed by under the ASA and the Amendments,

as well as Hewitt's allocation work in the *Tittle* Litigation.  Houston is the situs of the execution of the Letter Agreement by the Administrative Committee and Hewitt.[3]  (*Id.* ¶¶ 20-22.)  The Woodlands is the situs of Hewitt's botched allocation work under the Letter Agreement as well as Hewitt's work to analyze the effect of its gross incompetence thereafter.  (*Id.* ¶¶ 30-33.)

Houston is the situs of the *Tittle* Litigation, in which Hewitt – as Judge Harmon specifically found – began serving as "Fund Administrator" for the massive settlement fund more than two years ago. (Enron Rev. Mem. Ex. 6 ¶ 5.)  Indeed, for more than a year now, Hewitt has been appearing before Judge Harmon in Houston trying to escape responsibility for its grossly defective work as Fund Administrator.  Similarly, Houston is the situs of the Administrative Committee Action—the very litigation for which Hewitt seeks defense and indemnification here.

Critically, in its Response, Hewitt *never disputes* that virtually all of the events at issue took place in and around Houston.  In fact, Hewitt's only response on this point is to conclusorily state, in its Response *as well as* its supporting affidavit of Robert Dunlap, that "the basic terms of the ASA and the basic terms of the January 1, 2005 Amendment were prepared by Hewitt personnel located in Illinois."  (Hewitt Resp. at 8; Hewitt Resp. Ex. 6 ¶ 6.)[4]  Dunlap (based in

---

[3]  In his affidavit submitted in support of this motion, Robert Jones avers that Hewitt typed the notation in the signature block of the Letter Agreement indicating that Jones was signing on behalf of the "Administrative Committee."  (Enron Rev. Mem. Ex. 3 ¶ 22.)  In his affidavit submitted in support of Hewitt's opposition to this motion, Robert Dunlap denies that Hewitt placed this notation in the signature block.  This factual dispute is not significant for purposes of this motion.  What is significant is the fact that both Jones and Dunlap executed the Letter Agreement in Houston, Texas.  Curiously, Hewitt labels Mr. Jones's averments about the Letter Agreement as "parol evidence," while spending two pages of its opposition attempting to argue that the ASA and not the Letter Agreement governed Hewitt's allocation work.  Enron disagrees.  However, the issue of whether the ASA or the Letter Agreement governed Hewitt's allocation work is already being litigated in the Southern District of Texas.  That issue need not be decided on this motion (or by this Court).  Enron will respond to Hewitt's argument at the appropriate time and in the appropriate forum.

[4]  The conclusory nature of this assertion is telling, in that Hewitt unavailingly attempts to take Enron to task for purportedly making conclusory statements that "numerous" unspecified witnesses are

The Woodlands and Hewitt's go-to affiant in all of the litigation relating to Hewitt's misallocation) failed to identify the purported Illinois-based personnel who were involved, nor did he indicate whether these unknown people are still employed by Hewitt. Nevertheless, Dunlap *concedes* that he negotiated the January 1, 2005 Amendment, makes no mention of who negotiated the original ASA or the July 25, 2006 Amendment, and concedes that he wrote and negotiated the July 28, 2006 Letter Agreement, the effect of which is one of the primary points of contention in this dispute as well as the Administrative Committee Action. When faced with the litany of events tied to Houston, one vague assertion that "Hewitt personnel located in Illinois" "prepared the basic terms" of the ASA and Amendment I fails to provide any legitimate evidence of a connection between this dispute and Illinois.

### C. Relative Ease of Access to Sources of Proof

As Hewitt's Response makes clear, there is also no doubt that vast majority of witnesses in this dispute, both party witnesses and non-party witnesses, are located in Texas—and *none* are located in Illinois. In fact, Hewitt specifically acknowledges that "[t]he Hewitt witnesses who would be in a position to testify regarding the error giving rise to this dispute are split between Atlanta and Houston" – but they identify *only one* Atlanta-based Hewitt employee, Andrew Ross. (Hewitt Resp. at 8; Hewitt Resp. Ex. 6 ¶ 13.) Hewitt attempts to minimize the significance of this admission by stating that it would bear the burden of ensuring its employees' availability in Illinois,[5] but the fact remains that all but one of the parties' witnesses are in Texas and not one is in Illinois.

---

located in the transferee district and thus is well aware that its own unspecified generalizations bear no weight.

[5]     The same would be true upon transfer of this case to Texas. Although Hewitt has failed to identify by name any personnel in Illinois who have relevant knowledge, to the extent any do exist,

Generally, however, Hewitt simply ignores this issue and instead claims that Enron only generally alleges that numerous witnesses are located in the transferee district. A review of Enron's supporting declaration from Robert Jones demonstrates that Hewitt's characterization of it as "offer[ing] only a conclusory affidavit stating that 'numerous witnesses, including employees and business associates' were located in the transferee forum" (Hewitt Resp. at 7) is preposterous. In its memorandum and its supporting declaration, Enron has painstakingly identified all of its own current and former employees as well as each Hewitt employee with relevant knowledge and further enumerated their specific area(s) of involvement, as to which they would testify. (Enron Rev. Mem. at 6-12; Enron Rev. Mem. Ex. 3 ¶¶ 7-34.)

The ability to compel the testimony of witnesses is another important factor in determining the relative ease of access to sources of proof for purposes of the transfer analysis. *See Conseco Life Ins. Co.*, 2001 U.S. Dist. LEXIS 21475, at *13; *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1312 (N.D. Ill. 1993). This factor is critical in this case because many of the Enron personnel involved in the material events are no longer employed by the company. In fact, only three of the individuals from Enron that were generally involved in relevant dealings with Hewitt are still Enron employees: Robert Jones, Wade Cline and Pam Butler. Nevertheless, many of the former Enron employees continue to reside within the subpoena power of the Southern District of Texas, but *none* are within the subpoena power of the Northern District of Illinois. (Enron Rev. Mem. Ex. 3 ¶¶ 7-8, 11-12, 14, 18.) In sum, virtually all former employees with knowledge of material events are located within the subpoena power of the Southern District of Texas. No such witnesses have been identified in Illinois. The relative ease of access to sources of proof is far greater in Texas than Illinois.

---

Hewitt has control over its employees and thus can produce them in Texas. *FUL Inc.*, 839 F. Supp. at 1311-1312.

### D.　The Convenience of the Parties

The convenience of the parties in this case, including an analysis of the respective residences of the parties and their abilities to bear the expense of trial in the competing forums, also weighs strongly in favor of transfer. *Conseco Life Ins. Co.*, 2001 U.S. Dist. LEXIS 21475, at *13. Enron's headquarters are in the Southern District of Texas. (Enron Rev. Mem. Ex. 3 ¶ 3.) Enron has no offices or employees in Illinois. Hewitt alleges its principal place of business is in Lincolnshire, Illinois (Compl. ¶ 1), but it maintains a massive facility in The Woodlands, Texas, where most of Hewitt's relevant work occurred. Notably, Hewitt has not denied that its facility at The Woodlands Facility was the locus of its activity in this case.

Enron has virtually no ongoing business operations. (Enron Rev. Mem. Ex. 3 ¶ 5.) In contrast, Hewitt is a robust entity, well equipped to litigate and physically present in the Southern District of Texas. Indeed, Hewitt has already appeared in the Southern District of Texas before Judge Harmon and actively litigated several issues in connection with its incompetent performance as Fund Administrator in the *Tittle* Litigation. Further, Hewitt has retained control over its employees with relevant knowledge, and is able to bring them to Texas, while many Enron employees with relevant knowledge are no longer employed by Enron and thus not under Enron's control. Thus, the convenience of the parties substantially favors transfer to the Southern District of Texas.

### Conclusion

This action is wholly derivative of the Administrative Committee Action and consolidated *Tittle* Litigation pending in the Southern District of Texas. That Court – not the Northern District of Illinois – will determine the central issues in dispute in Hewitt's Complaint, including whether: (i) the ASA even applies to the allocation work botched by Hewitt as Fund

Administrator, and (ii) Hewitt was grossly negligent. Those issues will be decided in the Administrative Committee Action, which was filed more than six months before Hewitt filed its Complaint in state court in Lake County, Illinois. Hewitt's complaint is a dependent action, a "tail" which should not be allowed to "wag the dog" of the *Tittle* Litigation and the Administrative Committee Action. The Court should grant Enron's motion and transfer these proceedings to the Southern District of Texas so that this dispute can proceed in the forum where the central issues in dispute are already being litigated.

Dated: August 8, 2008

> Respectfully submitted,
>
> ENRON CREDITORS RECOVERY CORP.
>
>
> By:     /s/ Dawn L. Johnson
>         One of its Attorneys

Peter G. Rush
Paul J. Walsen
Dawn L. Johnson
Sara E. Robinson
BELL, BOYD & LLOYD LLP
70 West Madison Street, Suite 3100
Chicago, IL  60602
(312) 372-1121

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that she caused true and correct copies of the foregoing **Reply Memorandum in Support of Defendant Enron Creditors Recovery Corp.'s Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)** to be served upon:

> Joel G. Chefitz (jchefitz@mwe.com)
> Mark J. Alschul (maltschul@mwe.com)
> McDermott Will & Emery LLP
> 227 West Monroe Street
> Chicago, Illinois  60606

via the U.S. District Court for the Northern District of Illinois' CM/ECF Electronic Document Filing System, this 8th day of August, 2008.

/s/ Dawn L. Johnson
Dawn L. Johnson
